UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ELEANOR BACHMAN, Individually and On Behalf of All Others Similarly Situated, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:05CV00770  ERW |
| A.G. EDWARDS et al., | ) ) | |
| Defendants. | ) ) | |

MEMORANDUM AND ORDER

This matter comes before the Court upon Plaintiffs' Motion to Remand [doc. #10] and Defendants' Motion to Dismiss [doc. #14].

I.   BACKGROUND FACTS

On April 12, 2005, Plaintiffs, on behalf of themselves and all others similarly situated, filed a Class Action Petition ("the Petition") against Defendants A.G. Edwards & Sons, Inc. and A.G. Edwards, Inc. ("Defendants" or "A.G. Edwards") in the Circuit Court of the City of St. Louis. According to the Petition, the instant action is one for "breach of fiduciary duties and unjust enrichment on behalf of current and former clients of [Defendants][1] who have maintained an account at A.G. Edwards and who held shares of any mutual funds offered by any of A.G. Edwards' preferred mutual fund families . . . during the period April 12, 2000, through April 12, 2005" (the "Proposed

---

[1]According to the Petition, A.G. Edwards & Sons is a financial services holding company with approximately 715 locations throughout the United States and London employing approximately 6,900 financial consultants providing services for approximately 3,600,000 clients, most of whom are individual clients.  Pet. ¶ 11.

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Class").[2]  Pet. ¶ 1.  The action "arises from Defendants' secretly collecting millions and millions of dollars in undisclosed and improper kickbacks[3] paid to the Defendants by certain preferred mutual fund families."  Pet. ¶ 2.  These kickbacks "created unmanageable and continuing conflicts of interest and breaches of fiduciary duties by Defendants and allowed Defendants to profit secretly from the assets they hold in trust for their clients."  Pet. ¶ 3.  The Petition alleges that certain "material facts" were "concealed throughout the Class Period," including that Defendants participated in certain "pay to stay activities"[4] and that "[i]n exchange for Defendants' clients maintaining preferred fund shares in their A.G. Edwards accounts, the preferred mutual funds agreed to pay and did pay substantial kickbacks to Defendants."  Pet. ¶ 29.

In Count I, Plaintiffs allege that Defendants owe them certain fiduciary duties and that Defendants breached those duties by profiting from their clients' assets.  Pet. ¶ 36-42.  Count I asserts that Defendants must disgorge any profits they obtained by this improper use of their clients' investments and that Plaintiffs are entitled to an amount equal to the kickback payments.  Pet. ¶ 43. In Count II, Plaintiffs allege that Defendants "have unjustly profited from their conflicts of interest and breach of fiduciary duty to Plaintiffs and other members of the Class," and that a benefit was thereby

---

[2]The Petition excludes certain individuals from the class: "Excluded from the Class are Defendants, the officers and directors of the Defendants, members of their immediate families and their legal representatives, heirs, successors or assigns, any entity in which Defendants have or had a controlling interest, and any entity affiliated with any of the preferred funds."  Pet. ¶ 17.

[3]The Petition uses the terms "kickbacks" and "revenue sharing" to describe a process through which certain mutual fund companies return a portion of their profits to brokers.  The kickbacks at issue here were paid quarterly or "at other regular intervals" by the preferred mutual funds.  Pet. ¶ 4.

[4]The phrase "pay to stay activities" refers to "the preferred mutual funds who paid Defendants kickbacks in exchange for the maintenance of preferred fund shares in the accounts of A.G. Edwards clients."  Pet. ¶ 26.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

conferred upon Defendants by Plaintiffs.  Pet. ¶ 47.  Count II asserts that Plaintiffs are entitled to the kickbacks Defendants received as a result of Defendants' breaches of fiduciary duties.  Pet. ¶ 50.[5]

On May 13, 2005, Defendants timely removed this action to this Court, asserting that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 78bb(f) and 77p.  On June 9, 2005, Plaintiffs moved to remand this action to the state court from which it was removed.  On June 16, 2005, Defendants moved to dismiss this action.  A hearing was held on August 4, 2005, and the Court heard arguments from the parties on the Motions.

## II.    STANDARD FOR FEDERAL JURISDICTION

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  If a federal court takes action in a dispute over which it lacks subject matter jurisdiction, that action is a nullity.  *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18 (1951); *Hart v. Terminex Int'l*, 336 F.3d 541, 541-42 (7th Cir. 2003) (stating that it was "regrettable" that the case had to be dismissed for lack of subject matter jurisdiction "rendering everything that has occurred in [the] eight years [of litigation] a nullity").  A claim may be removed to federal court only if it could have been brought in federal court originally; thus, the diversity and amount in controversy requirements of 28 U.S.C. § 1332 must be met, or the claim must be based upon a federal question pursuant to 28 U.S.C. § 1331.  *Peters v. Union Pac. R.R. Co.*, 80 F.3d 257, 260 (8th Cir. 1996).

The party invoking jurisdiction bears the burden of proof that the prerequisites to jurisdiction are satisfied.  *In re Bus. Men's Assurance Co.*, 992 F.2d 181, 183 (8th Cir. 1993).  Because the

---

[5]Plaintiffs disclaim any right to relief based upon federal law, and they disclaim any right to relief arising in connection with their purchase or sale of any security.  Pet. ¶ 13.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

removal statutes impede upon states' rights to resolve controversies in their own courts, such statutes must be strictly construed. *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 861 (8th Cir. 2002). Although a defendant has a statutory right to remove when jurisdiction is proper, the plaintiff remains the master of the claim and any doubts about the propriety of removal are resolved in favor of remand. *See In re Bus. Men's*, 992 F.2d at 183; *McHugh v. Physicians Health Plan of Greater St. Louis*, 953 F. Supp. 296, 299 (E.D. Mo. 1997).

## III.  DISCUSSION

Defendants removed this action pursuant to the complete preemption provision of the Securities Litigation Uniform Standards Act of 1998 (SLUSA), Pub. L. No. 105-353, 112 Stat. 3227 (codified at 15 U.S.C. § 78bb(f)).[6]  As the Eighth Circuit has recognized, "Congress designed SLUSA to close a perceived loophole in the pleading requirements of the Private Securities Litigation Reform Act of 1995." *Green v. Ameritrade, Inc.*, 279 F.3d 590, 595 (8th Cir. 2002).  In general, SLUSA has made federal courts "the exclusive fora for most class actions involving the purchase and sale of

---

[6]The relevant portion of Section 78bb(f) states as follows:

(f)     Limitations on remedies
    (1)     Class action limitations
        No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging–
        (A)     a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
        (B)     that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.
    (2)     Removal of a covered class action
        Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

securities." *Id.* (internal quotation marks omitted).  In the Eighth Circuit,

> [a] party seeking to establish that a claim falls within SLUSA's preemptive scope must show that the claim satisfies four criteria: (1) the action is a "covered class action" under SLUSA, (2) the action purports to be based on state law, (3) the defendant is alleged to have misrepresented or omitted a material fact (or to have used or employed any manipulative or deceptive device or contrivance), and (4) the defendant is alleged to have engaged in conduct described by criterion (3) "in connection with" the purchase or sale of a "covered security."

*Id.* at 596.  The burden is on the defendant to demonstrate that these requirements are met.  *Id.* at 597.

The question the Court must consider is whether the complaint "can reasonably be read as alleging

a sale or purchase of a covered security made in reliance on the allegedly faulty information provided

to [the plaintiff] and to putative class members by [the defendant]." *Id.* at 598; *see also Prof'l Mgmt.*

*Assoc., Inc. v. Employees Profit Sharing Plan*, 335 F.3d 800, 803 (8th Cir. 2003) (quoting *Green*).


The parties do not dispute that the first two SLUSA elements are satisfied in this case.  First,

the Petition meets the definition of a "covered class action" in that Plaintiffs expressly indicate their

intent to bring their claims as a class action.[7]  Second, the Petition expressly states that Plaintiffs'

claims "are based solely and exclusively upon the common law of the State of Missouri." Pet. ¶ 13.[8]

The issue for the Court is whether Defendants have met their burden of showing that Plaintiffs' claims

allege acts "in connection with the purchase or sale of a covered security."

---

[7]See Pet. ¶¶ 13, 18, 21 ("Plaintiffs, for themselves and all others similarly situated"; "members of the Class are so numerous that joinder of all members is impracticable"; "[c]ommon questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class").

[8]This claim is based on state law.  *See Paine Webber, Inc. v. Voorhees*, 891 S.W.2d 126, 130 (Mo. 1995) (stockbrokers owe customers fiduciary duties to refrain from self-dealing and disclose any self-interest).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

SLUSA does not define the phrase "in connection with." To interpret this language, courts look to cases interpreting identical language found in Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder. *Green*, 279 F.3d at 597. The United States Supreme Court has held that a cause of action under 10b-5 is limited to actual purchasers or sellers of stock. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975). The Court has explained further that the phrase "should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes." *Sec. and Exch. Comm'n v. Zandford*, 535 U.S. 813, 819 (2002) (internal quotation marks omitted). While the Court has cautioned that the phrase "must not be construed so broadly as to convert every common-law fraud that happens to involve securities into a violation of § 10(b)," *id.* at 820, it has also stated that "[i]t is enough that the scheme to defraud and the sale of securities coincide." *Id.* at 822. SLUSA's "in connection with" requirement "is not limited to cases involving damages claimed as a result of the purchase or sale of securities. Instead, SLUSA applies to any covered class action alleging an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security." *Prof'l Mgmt. Assoc., Inc. Employees Profit Sharing Plan v. KPMG, LLP*, 335 F.3d 800, 803 (8th Cir. 2003).

Defendants make two primary arguments in support of their contention that the conduct alleged by Plaintiffs meets the "in connection with" requirement. Defendants' first argument is that the alleged conduct necessarily involves the purchase of securities. According to Defendants, a reasonable reading of the Petition reveals that "the clear and unmistakable import of Plaintiffs' claims is that A.G. Edwards altered its investment advice and steered clients to 'preferred' funds to earn fees" and that the allegations concern "what was or was not disclosed about the basis for investment advice." Defs.' Mem. in Opp. at 9-10. Thus, Defendants contend that the alleged scheme "could not

6

possibly have worked without a purchase of securities." *Id.* at 9.  In further support of this first argument, Defendants contend that Plaintiffs' request for return of the kickback payments is "directly tied to the amount of shares held, which in turn requires a purchase at some point in time, necessarily connecting the state law claim with the purchase of securities." *Id.* at 10.  Defendants' second argument is that the Proposed Class definition mandates the application of SLUSA because it fails to distinguish between preempted and potentially nonpreempted claims.[9]  According to Defendants, the Petition must be dismissed in its entirety because Plaintiffs do not exclude from their Proposed Class those customers who purchased or sold their holdings in preferred funds during the Class Period or in reliance on the alleged omission.

A close examination of the Petition reveals that Plaintiffs' claims do not arise "in connection with" the purchase or sale of a security.  Despite Defendants' arguments to the contrary, the focus of the Petition is on Defendants' alleged collection of millions of dollars in undisclosed kickbacks.  The alleged scheme, as described in the Petition, was that Defendants collected these kickbacks without their clients' knowledge and that Defendants thereby profited from their clients' assets.  This, according to the Petition, was in direct breach of Defendants' fiduciary duties.  Defendants' contention that the Petition alleges that Defendants altered their investment advice or steered clients toward certain preferred funds is contrary to the clear allegations contained in the Petition.  The Petition does not allege that Defendants induced Plaintiffs to purchase certain funds or that Defendants gave

---

[9]Defendants also complain that the Petition does not state when the alleged misstatements or omissions were made, when Plaintiffs purchased their funds, or whether Plaintiffs changed the size of their holdings during the Class Period.  These alleged deficiencies do not provide a basis upon which to dismiss Plaintiffs' claims.  To the extent these inquiries are the proper source of discovery, Defendants presumably can obtain the information they believe they need through that process.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

improper investment advice.[10]

Turning its attention to the requested relief, the Court notes that the requested relief makes it clear that Plaintiffs' claims are not "in connection with" the purchase or sale of a security. In Counts I and II, Plaintiffs allege that, due to the alleged breaches of fiduciary duties, Defendants should have to disgorge whatever profits they obtained by improper use of their clients' assets (i.e. the kickback payments). Plaintiffs seek disgorgement of these kickbacks on the ground that Defendants, as fiduciaries and agents, may not themselves profit from the assets they hold for their clients. The alleged scheme is not dependent upon the purchase or sale of a security.[11] Under Defendants' reading

---

[10]In arguing that Plaintiffs' allegations are actually based on a claim that Defendants provided improper investment advice and steered Plaintiffs toward purchasing certain funds in an effort to collect fees, Defendants appear to rely on a single passage from the Petition stating that the undisclosed kickback payments gave brokers an incentive to support their clients' continued holding of their shares. The allegation in its entirety is as follows:

> Unbeknownst to its customers, Defendants received payments on a quarterly or other periodic basis for each year that the Defendants' clients held shares in one or more funds of the preferred fund families. These undisclosed payments provided Defendants with a secret incentive to support the continued holding of those investments for as long as possible, regardless of changes in circumstances that would otherwise cause a truly objective broker to recommend that the clients sell such shares. In breach of their fiduciary duties, Defendants acted in their own self interest and failed to disclose to Plaintiffs and the Class that they secretly profited from their client's investments in the preferred mutual fund families by receiving undisclosed payments based on their clients' investments held in trust.

Pet. ¶ 30. There is no indication from the Petition that Plaintiffs are alleging that Defendants gave them bad investment advice or that Defendants steered them toward purchasing certain securities. Instead, the allegation upon which Defendants focus, when viewed in its proper context, merely explains the conflict of interest which arose as a result of Defendants' alleged actions.

[11]Defendants point to *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294 (3d Cir. 2005), in support of their argument that the "in connection with" requirement is satisfied because the alleged scheme is dependent upon the purchase of securities. In *Rowinski*, the plaintiff alleged that Salomon provided biased research to the investing public in an attempt to attract investment banking business, and the plaintiff brought a class action based on breach of contract, unjust

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

of the Petition, it is difficult to imagine any case in which a plaintiff could be said to be a "nonpurchaser," a result which would be contrary to established law. *See Zandford*, 535 U.S. at 820 (phrase must not be construed so broadly as to convert every claim that happens to involve securities into a federal claim). The acts at issue here pertain to the fiduciary relationship between the broker and the client.

Finally, the Court considers Defendants' proposed class definition argument. As an initial matter, Defendants have not provided the Court with any binding authority in support of their proposition that a proposed class definition must "adequately distinguish between claims that meet the 'in connection with' requirement for SLUSA and claims that do not." Mem. in Opp. at 11.[12] In

---

enrichment, and state consumer protection statutes, seeking the return of fees paid by the plaintiff to Salomon in exchange for the biased research. *Rowinski*, 398 F.3d at 296-97. In affirming the district court's decision to deny the plaintiff's motion to remand and to grant the defendant's motion to dismiss, the Third Circuit reasoned that the "in connection with" element was satisfied because the alleged scheme required that investors actually purchase the misrepresented securities. *Id.* at 302. The facts of the instant case differ significantly. For example, in *Rowinski*, the plaintiff was seeking recovery of all fees and charges which had been collected, fees which included trading fees and commissions which were only incurred in connection with purchases and sales. *Id.* at 303. Here, however, the allegations center on Defendants' acceptance of improper kickbacks in violation of their duties as fiduciaries and agents. Plaintiffs seek damages limited to the kickbacks Defendants received.

Defendants also urge the Court to adopt the *Rowinski* court's four-part framework for determining whether the "in connection with" requirement has been met. This framework has not been adopted by the Eighth Circuit and is not binding on this Court. In any event, using the Third Circuit's four-part framework would not change the result in this case.

[12]Defendants cite to *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir 2005), in support of this proposition. In *Dabit*, a consolidated action, a plaintiff claimed that he had been damaged as a result of being induced to hold securities on the basis of biased research. *Dabit*, 395 F.3d at 29-30. In examining the complaint, the Second Circuit noted that the class definition included those with preempted claims of purchase and retention. *Id.* at 46. The *Dabit* court concluded that, where a complaint does not include information sufficient to permit a court to identify and separate preempted and nonpreempted subclasses, "the proper approach will ordinarily be" to dismiss the claim. *Id.* *Dabit* is both non-binding on this Court and factually distinct from the instant case. The allegation in *Dabit* concerned an inducement to hold

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

any event, the Court finds this argument unpersuasive.  The Petition clearly states that the Class

consists "of all persons or entities who maintained an account with Defendants in which any of the

Defendants' preferred mutual funds were held during the Class Period."  Pet. ¶ 17.  The Petition is

clear that Plaintiffs allege no claims based on the purchase or sale of mutual fund shares.[13]  The import

of the Petition is that the Proposed Class is made up of those persons who held funds during a

specified period, and that those persons seek to recover money that Defendants improperly obtained

during that relationship.  Finally, Plaintiffs have expressly disavowed any right to relief arising in

connection with their purchase or sale of any security.[14] In sum, the Petition cannot reasonably be read

---

securities on the basis of biased research.  The allegation in the instant case is different.  Here, Plaintiffs do not claim that they were damaged because they were induced to hold their securities; instead, they claim to have been harmed by their brokers' breaches of fiduciary duties.  In any event, the Petition here does include information sufficient to satisfy the Court that the Petition does not contain any preempted claims.  It is apparent from the Petition itself that Plaintiffs are not making allegations that they purchased shares or changed the size of their holdings in reliance on any misstatement or omission by Defendants.

[13]The fact that some class members might also have unasserted preempted claims does not render the Petition subject to SLUSA.  The Petition does not make any allegations based on the purchase or sale of a security.  For example, there are no allegations that any Plaintiff purchased or sold a security in reliance on a material omission or misrepresentation.  Plaintiffs' claims do not depend on the purchase of a security in reliance upon any misrepresentation or omission.  Instead, the focus of the Petition is on the alleged improper actions of Defendants after the assets were acquired.  *See Green*, 279 F.3d at 599 (plaintiff can plead claim for misrepresentation or omission and still avoid SLUSA if claim does not require proof of a sale or purchase of a covered security in reliance on the misrepresentation).  Moreover, Plaintiffs do not allege that Defendants wrongfully induced them to purchase the funds or that any recommendation to purchase the funds was unsuitable.

[14]The *Green* plaintiff made a similar disavowal during oral argument before the Eighth Circuit after the district court had determined that the action should be remanded to state court because it alleged no sale or purchase of a covered security.  The Eighth Circuit noted this disavowal, stating that, due to the plaintiff's statement that it disavowed any damages for any sale or purchase made in reliance on certain erroneous information, the plaintiff "would appear to be judicially estopped, by reason of his representations in open court, from pursuing any such damages."  *Green*, 279 F.3d at 599 n.7.

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

as alleging a sale or purchase of a covered security made in reliance on any material omission by Defendants. *See Green*, 279 F.3d at 598. This Court concludes that Defendants have failed to meet their burden under *Green*, which requires them to demonstrate that the claims arise "in connection with" the purchase or sale of a security.

Because the Court has found that the allegations in this case do not arise "in connection with" the purchase or sale of a security, the Court need not reach the parties' arguments regarding the third SLUSA element as to whether Plaintiffs' claims allege misrepresentations or omissions of material fact.[15] Plaintiffs' claims are not preempted by SLUSA and are based entirely on state law. Therefore, the Court will remand this action to the state court from which it was removed.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand [doc. #9] is **GRANTED**. This action is remanded to the Circuit Court of St. Louis City.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss [doc. #14] is **DENIED as moot**.

Dated this 26th day of September, 2005.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

---

[15]Defendants contend that this element is clearly satisfied because Plaintiffs allege that the kickbacks were undisclosed, concealed, and unknown to Defendants' customers. Plaintiffs contend that they have made no allegations of deception in connection with a purchase or sale. They state that they merely allege that Defendants accepted as their own the benefits of the kickbacks. Even assuming that the third SLUSA element is satisfied, Defendants have nonetheless failed to meet their burden of demonstrating that the acts at issue here were "in connection with the purchase of a covered security." *See Green*, 279 F.3d at 597.

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com